1  Carly M. Roman, CA Bar No. 349895
   Andrew Gunem, CA Bar No. 354042
2  Samuel J. Strauss, *pro hac vice forthcoming*
   **STRAUSS BORRELLI PLLC**
3  One Magnificent Mile
   980 N Michigan Avenue, Suite 1610
4  Chicago IL, 60611
   Telephone: (872) 263-1100
5  Facsimile: (872) 263-1109

6  *Attorneys for Plaintiff and Putative Class*

7  **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**

8

9  **OWEN DELONG,** individually and on behalf of all others similarly situated,

   Case No. _____

10          Plaintiff,

   **CLASS ACTION COMPLAINT**

11      v.

   **JURY TRIAL DEMANDED**

12 **FREEDOM MORTGAGE CORPORATION,**

13          Defendant.

14

15      Owen DeLong, individually and on behalf of others similarly situated, alleges

16  the following against Freedom Mortgage Corporation ("Freedom Mortgage" or

17  "Defendant").

18  \\

19  \\

20  \\

21  CLASS ACTION COMPLAINT
    -1-

## I. NATURE OF ACTION

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's

telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id…*This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Freedom Mortgage made calls to residential telephone numbers, like Plaintiff's, that were listed on the National Do Not Call Registry.

4. Plaintiff now files this lawsuit seeking injunctive relief, requiring Freedom Mortgage to cease placing unsolicited calls to residential numbers on the National Do Not Call Registry, as well as an award of statutory damages and costs to Class members.

## II. JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

6. This Court has personal jurisdiction over Freedom Mortgage because it regularly conducts business in this District, including making telemarketing calls into this District and soliciting business from this District.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district, namely the telemarketing calls to the Plaintiff.

### III. PARTIES

8. Plaintiff is a citizen of San Jose, California, residing in this Division.

9. Defendant Freedom Mortgage is a mortgage lender and servicer in Boca Raton, Florida.

### IV. BACKGROUND

10. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## V. FACTUAL ALLEGATIONS

14. Plaintiff is, and at all times mentioned here in was, a "person" as the term is defined by 47 U.S.C. § 153(39).

15. Plaintiff's telephone number, (408) 890-XXXX, has been on the National Do Not Call Registry since October 2009. Plaintiff has never removed his telephone number from the National Do Not Call Registry.

16. Plaintiff uses his telephone number for personal, residential, and household purposes.

17. The telephone number is not associated with a business.

18. At no point has Plaintiff sought out or solicited information regarding Defendant's products or services prior to receiving the text messages at issue.

19. Plaintiff has never consented to receive calls or text messages from Defendant.

20. Despite this, the Plaintiff has repeatedly received text messages from Defendant.

21. The texts were initiated for purposes of marketing Defendant's mortgage related products.

22. On December 19, 2024, Defendant sent Plaintiff the first spam text message advertising its services. It read as follows:

> Freedom Mortgage: James, are you thinking about making a move this holiday season? We're here to help you through the process! See how you can save thousands when you buy or sell through Freedom Homes partners. Visit http:// www.freedommortgage.com/BuyandSave or call 888-369-3409 to learn about how you can receive Cash Rewards. MSG&DataRatesApply. Text STOP=End, HELP=Help,

23. Plaintiff Replied "STOP" within thirty minutes of receiving this text.

24. Nevertheless, on January 2, 2025, Plaintiff received another spam text from Defendant with similar content.

25. The same day, Plaintiff replied "STOP" as the automated text from Defendant suggested he could.

CLASS ACTION COMPLAINT
-6-

26. Despite Plaintiff's requests to STOP, Defendant sent Plaintiff four additional text messages on January 9, January 22, and twice on January 29, 2025. A photo excerpt of the chat is directly below:



27. Frustrated, Plaintiff replied "STOP STOP STOP STOP" on January 29, 2025, after receiving two more spam texts from Defendant within 10 minutes.

28. Despite Plaintiff's continued and repeated requests, Defendant texted Plaintiff more spam messages related to Defendant's products on the following dates: February 4, 11, and 21, 2025.

29. In response to the solicitations Plaintiff received, on February 21, 2025, Plaintiff again asked Defendant to "STOP."

30. On February 27, 2025, Plaintiff received another text from Defendant, and replied, "STOP" once more.

31. On March 4, 2025, Plaintiff received another text from Defendant, and replied, "STOP" once more.

32. On March 11, 2025, Plaintiff received another text from Defendant, and replied, "STOP" once more.

33. On March 21, 2025, Plaintiff received another text from Defendant, and replied, "STOP" once more.

34. On March 26, 2025, Plaintiff received another text from Defendant, and replied, "STOP" once more.

35. On April 1, 2025, Plaintiff received another text from Defendant, and replied, "STOP" once more.

36. On April 8, 2025, Plaintiff received another text from Defendant, and replied, "STOP" once more.

37. On April 16, 2025, Plaintiff received another text from Defendant, replied, "STOP" once more.

38. On April 25, 2025, Plaintiff received another text from Defendant, and replied, "STOP" once more.

39. On May 2, 2025, Plaintiff received another text from Defendant, and replied, "STOP" once more.

40. On May 9, 2025, Plaintiff received another text from Defendant, and replied, "STOP" once more.

41. On May 16, 2025, Plaintiff received another text from Defendant, and replied, "STOP" once more.

42. On May 22, 2025, Plaintiff received another text from Defendant, and replied, "STOP" once more.

43. On May 29, 2025, Plaintiff received another text from Defendant, and replied, "STOP" once more.

44. Finally, on June 4, 2025, Plaintiff received another text from Defendant, and replied, "STOP" once more.

45. In total Defendant sent 24 spam texts to Plaintiff over his repeated requests to STOP.

46. Freedom Mortgage repeatedly flaunts consumer protections laws. In 2020, it agreed to settle out liability under the TCPA for all calls to members of its servicing portfolio for $9.5 million. *Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 346 (D.N.J. 2020). The CFPB has also taken action against Freedom Mortgage for engaging in illegal kickback schemes to real estate brokers and agents in return for mortgage referrals, and for submitting error-riddled mortgage loan data

CLASS ACTION COMPLAINT
-9-

to federal regulators in violation of the Home Mortgage Disclosure Act and a previous order issued by the CFPB.

47. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. Plaintiff and the Class members were also harmed by use of their telephone power and network bandwidth and the intrusion on their telephone that occupied it from receiving legitimate communications.

## VI. **CLASS ACTION ALLEGATIONS**

48. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

49. Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing text message or call from or on behalf of Defendant encouraging the purchase Freedom Mortgage's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

50. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of their agents.

51. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

52. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendant has no defenses unique to Plaintiff.

53. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

a. Whether Defendant obtained "prior express invitation or permission" under the TCPA, before the text messages at issue;

b. Whether Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

c. Whether Defendant sent telemarketing text messages without providing the called party with the name of the individual caller or the name of the person or entity on whose behalf the text message is being made;

d. The number of telemarketing text messages Defendant sent to California residents' cell phones or pagers;

e. Whether Defendant should be held liable for violations committed on its behalf, if any; and

f. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

54. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of

effort and expense that numerous individual actions would entail. There are hundreds of Class members, such that joinder of all members is impracticable.

55. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

    a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

    b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

    c. Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

56. Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

# COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Class)

57. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

58. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

59. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation text messages and/or telemarketing text messages to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

60. These violations were willful or knowing.

61. As a result of violations of the TCPA's national do-not-call rule by Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

62. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court enter judgment against Defendant for:

    A.    Certification of the National DNC Class as alleged herein;

    B.    Appointment of Plaintiff as representative of the Class;

    C.    Appointment of the undersigned as counsel for the Class;

    D.    Damages to Plaintiff and members of the Class pursuant to 47 U.S.C. § 227(b)(3); (c)(5);

    E.    Injunctive relief for Plaintiff and members of the Class, as described herein;

    F.    Attorneys' fees and costs, as permitted by law; and

    G.    Such other or further relief as the Court deems just and proper.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

*[Attorney signature block to follow on next page.]*

Respectfully submitted this 15th day of September, 2025.

By /s/ Carly M. Roman
Carly M. Roman, CA Bar No. 349895
Andrew Gunmen, CA Bar No. 354042
Samuel J. Strauss, *pro hac vice forthcoming*
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com
agunmen@straussborrelli.com
sam@straussborrelli.com

*Attorneys for Plaintiff and the Putative Class*